Peter J. Mucchetti
Antitrust Division
U.S. Department of Justice
450 Fifth Street, NW, Suite 4100
Washington, DC 20530
Tel.: (202) 353-4211
Fax: (202) 307-5802
peter.j.mucchetti@usdoj.gov

Michael W. Cotter
United States Attorney
District of Montana
Leif M. Johnson
Civil Chief
Office of the United States Attorney
2929 3rd Ave. N.
Billings, MT 59109
Tel.: (406) 247-4630
leif.johnson@usdoj.gov

ATTORNEYS FOR PLAINTIFF
United States of America

James P. Molloy
Chief of Consumer Protection
215 N. Sanders
PO Box 201401
Helena MT 59920-1401
Tel.: (406) 444-2026
jmolloy@mt.gov

ATTORNEY FOR PLAINTIFF
State of Montana

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF MONTANA, <br><br>        *Plaintiffs*, <br><br>   v. <br><br> BLUE CROSS AND BLUE SHIELD OF MONTANA, INC., BILLINGS CLINIC, BOZEMAN DEACONESS HEALTH SERVICES, INC., COMMUNITY MEDICAL CENTER, INC., NEW WEST HEALTH SERVICES, INC., NORTHERN MONTANA HEALTH CARE, INC., and ST. PETER'S HOSPITAL, <br><br>        *Defendants.* | Case No. _____ <br><br> **COMPLAINT** |

The United States of America, acting under the direction of the

Attorney General of the United States, and the State of Montana, acting

under the direction of the Montana Attorney General, bring this civil

antitrust action to enjoin an anticompetitive agreement (the "Agreement")

between defendant Blue Cross and Blue Shield of Montana, Inc. ("Blue

Cross") and defendants Billings Clinic; Bozeman Deaconess Health

Services, Inc.; Community Medical Center, Inc.; Northern Montana Health

Care, Inc.; and St. Peter's Hospital (collectively, the "hospital defendants"),

and to remedy the harm to competition that the announcement and

formation of the Agreement have caused and will likely continue to cause.

The hospital defendants are five of the six hospitals that own

defendant New West Health Services, Inc. ("New West"), a health-

insurance company that has vigorously and effectively competed against

Blue Cross to provide commercial health insurance to Montana consumers.

In the Agreement, Blue Cross agreed to pay $26.3 million to the hospital

defendants in exchange for their agreeing to collectively stop purchasing

health insurance for their own employees from New West and instead buy

insurance for their employees from Blue Cross exclusively for six years.

Blue Cross also agreed to provide the hospital defendants with two seats

on Blue Cross's board of directors if the hospitals do not compete with Blue

Cross in the sale of commercial health insurance.

The Agreement will likely cause New West to exit the markets for commercial health insurance, eliminating an important competitor to Blue Cross and ultimately leading to higher prices and lower-quality service for consumers.  Consequently, the Agreement unreasonably restrains trade in the sale of commercial health insurance in Billings, Bozeman, Helena, and Missoula, Montana, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.  The Agreement also substantially lessens competition in the sale of commercial health insurance in those same areas, and will likely continue to do so, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18, and the Montana Unfair Trade Practices Act, Mont. Code Ann. § 30-14-205.

Therefore, the United States seeks temporary, preliminary, and permanent injunctive and other equitable relief under Section 4 of the Sherman Act, 15 U.S.C. § 4, and Section 15 of the Clayton Act, 15 U.S.C. § 25, blocking the transaction; and the State of Montana seeks temporary, preliminary, and permanent injunctive and other equitable relief under Section 16 of the Clayton Act, 15 U.S.C. § 26, blocking the transaction.

Plaintiffs allege as follows:

## I.  DEFENDANTS AND THE TRANSACTION

1.     Defendant Blue Cross is a nonprofit corporation based in Helena, Montana.  Blue Cross sells a range of commercial health-insurance products, including preferred-provider organization ("PPO") products, health-maintenance organization ("HMO") products, indemnity products, and individual products, and its group products are offered on a fully-insured and self-insured basis.  In 2010, Blue Cross's annual revenues were approximately $530 million.

2.     For many years, Blue Cross has dominated the commercial health-insurance markets in Montana.  In the four geographic areas harmed by the Agreement, Blue Cross is by far the largest commercial health insurer, with shares ranging approximately from 43% to 75%.  Blue Cross has market power in each of these geographic areas.

3.     The hospital defendants are each non-profit corporations organized under Montana law:

a.     Billings Clinic is a 370-bed hospital in Billings, Montana;

b.    Bozeman Deaconess Health Services, Inc. is an 86-bed

hospital in Bozeman, Montana;

c.    Community Medical Center, Inc. is a 143-bed hospital in

Missoula, Montana;

d.    Northern Montana Health Care, Inc. is a 49-bed hospital

in Havre, Montana; and

e.    St. Peter's Hospital is a 122-bed hospital in Helena,

Montana.

4.    Defendant New West is a nonprofit corporation based in

Helena, Montana.  It was formed in 1998 by four hospitals—Billings Clinic,

Community Medical Center, Northern Montana Health Care, and St.

Peter's Hospital—to compete directly against Blue Cross, and to challenge

what the hospitals described as Blue Cross's "dominating presence."  In

2006, two additional hospitals acquired an ownership interest in New West:

Bozeman Deaconess (in Bozeman) and Benefis Health System (in Great

Falls).  Like Blue Cross, New West offers PPO products, HMO products,

indemnity products, and individual products, and its group products are offered on a fully-insured and self-insured basis.

5.     By 2011, New West had become the third-largest commercial health insurer in the four geographic areas harmed by the Agreement, with shares ranging from approximately 7% to 12%.  Over the last 13 years, New West has offered Montana residents a high-quality option for their health insurance, routinely pressuring Blue Cross to offer lower prices and better customer service.  New West's annual revenues in 2010 were approximately $120 million.

6.     On or around August 1, 2011, Blue Cross and the hospital defendants entered into the Agreement, a letter of intent in which Blue Cross agreed to pay $26.3 million to the hospital defendants in exchange for their agreeing to collectively stop purchasing health insurance for their own employees from New West and instead buy insurance for their employees from Blue Cross exclusively for six years, starting January 1, 2012.  (The only New West owner that did not sign the Agreement was Benefis Health System, which already used Blue Cross for its employees

and had never used New West.)  The hospital defendants collectively

account for approximately 11,000 enrolled lives, or roughly one-third of

New West's commercial health-insurance business at the time of the

Agreement.  The Agreement further requires that *all* of the hospital

defendants participate for the agreement to be effective: if any hospital

defendant withdraws, the Agreement is terminated.  Additionally, Blue

Cross agreed to install two representatives of the hospital defendants on

Blue Cross's board of directors if the hospitals do not own or belong to an

entity that competes with Blue Cross in the sale of commercial health

insurance.

   7. The Agreement effectively eliminates New West as a viable

competitor in the sale of commercial health insurance.  News that none of

New West's owners will buy health insurance for their own employees

from New West creates a perception that New West is exiting the

commercial health-insurance market, and will likely cause many existing

and potential customers to stop purchasing (or decline to purchase)

insurance from New West.  The Agreement also will lead New West and its

hospital owners to significantly reduce their support for and efforts to win commercial health-insurance customers, further hindering its ability to compete.

8.     Furthermore, because the hospital defendants agreed to act collectively, the Agreement ensures that New West would lose the support of all its owners and likely exit the market.

9.     In addition, by agreeing to install two representatives of the hospital defendants on Blue Cross's board of directors only if the hospitals did not own or belong to an entity that competes against Blue Cross, the Agreement further ensures that New West will lose the support of its owners and likely exit the market.

10.     As alleged below, by damaging and virtually eliminating New West as an effective competitor, the Agreement will significantly increase concentration in the markets for commercial health insurance in Montana and end the substantial head-to-head competition between Blue Cross and New West, likely resulting in higher insurance premiums and lower-quality service for Montana consumers in the affected markets.

## II.  JURISDICTION, VENUE, AND INTERSTATE COMMERCE

11.     Plaintiff United States brings this action under Section 4 of the

Sherman Act, 15 U.S.C. § 4, and Section 15 of the Clayton Act, 15 U.S.C. §

25, and plaintiff State of Montana brings this action under Section 16 of the

Clayton Act, 15 U.S.C. § 26, seeking injunctive and other equitable relief

from the defendants' violations of Section 1 of the Sherman Act and Section

7 of the Clayton Act, 15 U.S.C. §§ 1 and 18; and Mont. Code Ann. § 30-14-

205.

12.     The defendants are engaged in interstate commerce and in

activities substantially affecting interstate commerce.  They sell insurance

that covers residents when they travel across state lines; purchase health-

care services from providers located outside of Montana; and receive

payments from customers outside of Montana.  The defendants also

purchase health-care products and services, such as pharmaceuticals, in

interstate commerce.  Further, the availability of health insurance at

affordable prices can attract businesses and jobs to a state or region, and

higher health-insurance prices can affect interstate commerce by causing

employers to exit the state.  The Agreement, therefore, affects interstate commerce.

13.     The State of Montana brings this action on its own behalf and in its sovereign capacity as *parens patriae* on behalf of the citizens, general welfare, and economy of the State.  The State of Montana purchases group health insurance for approximately 16,000 employees in Montana, and it purchases from only two insurers: Blue Cross and New West.  The State is likely to be injured in its business and property as a result of this agreement.

14.     The Court has subject-matter jurisdiction over this action under Section 4 of the Sherman Act, 15 U.S.C. § 4, and Section 15 of the Clayton Act, 15 U.S.C. § 25 (as to claims by the United States); Section 16 of the Clayton Act, 15 U.S.C. § 26, and 28 U.S.C. § 1367 (as to claims by the State of Montana); and 28 U.S.C. §§ 1331, 1337(a), and 1345.

15.     The Court has personal jurisdiction over the defendants under Section 12 of the Clayton Act, 15 U.S.C. § 22.

16.     Venue is proper in this District under Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391.  Each defendant is a corporation that transacts business and is found in this District.  The acquisition was negotiated in substantial part in this District.  Therefore, a substantial part of the events giving rise to plaintiffs' claim occurred in this District.

### III.  THE RELEVANT MARKETS

**A.     Background on Commercial Health Insurance**

17.     In Montana, as throughout the United States, individuals who are not eligible for government programs such as Medicare or Medicaid typically obtain health insurance from commercial health-insurance companies.  Most employees obtain commercial health insurance through their employers.  Commercial health insurance obtained through an employer or another group is known as "group health insurance." Commercial health insurance that individuals purchase directly from an insurer is known as "individual health insurance."  In 2009, approximately 50% of Montana residents obtained group health insurance, and about 15%

obtained individual health insurance from commercial health insurers, including Blue Cross and New West.

18.     Commercial health insurers compete to be selected by employers, their employees, and individuals on a number of factors, including price; the breadth of their health-care provider networks; out-of-pocket costs, such as deductibles, co-payments, and coinsurance; customer service; and reputation.  Insurers also compete by developing programs to improve the health of their members and reduce medical-care costs.  For group health insurance, employers and other groups typically select the insurance plan or plans that they offer to their employees or group members, who then choose whether to enroll in the one or more plans offered.

19.     Group health insurance can either be "fully-insured" or "self-insured."  Under fully-insured plans, the insurer bears the risk that health-care claims will exceed anticipated losses.  Under self-insured plans, the employer itself pays a large portion of medical costs and bears a large

portion of the risk of unanticipated losses.  Self-insurance is a viable option

primarily for large employers only.

**B.    Relevant Product Markets**

20.    The relevant product markets affected by the proposed

transaction are (1) the sale of commercial group health insurance and (2)

the sale of commercial individual health insurance, collectively referred to

in this Complaint as "commercial health insurance."  Group health

insurance and individual health insurance are each lines of commerce for

purposes of analyzing the effects of the Agreement within the meaning of

Section 7 of the Clayton Act.

**(1)    Group Health Insurance**

21.    The sale of commercial group health insurance, including

access to a provider network, is a relevant product market.  Group health

insurance sold in Montana usually includes access to a provider network,

and most employers and their employees consider an insurer's provider

network to be an important element of a health-insurance product because

the network specifies the physicians and hospitals to which patients can turn for service with substantially lower costs to themselves.

22.     There are no reasonable alternatives to group health insurance, including access to a provider network, for employers or for most employees.  Individual health insurance is typically much more expensive than group health insurance, in part because employer contributions to group health-insurance premiums are not taxable to the employee and are tax deductible by the employer.  Virtually all individual health insurance is purchased by persons who do not have access to employer-sponsored group health insurance.

23.     Furthermore, purchasing hospital services directly (*i.e.*, without insurance), rather than through a commercial insurer, is typically prohibitively expensive and is not a viable substitute for group health insurance.  Employers without health insurance almost never purchase hospital services directly from hospitals at prices comparable to prices paid by Blue Cross or New West.

24.     Thus, a small but significant increase in the price of group

health insurance in the geographic markets alleged in paragraph 28 would

not cause a sufficient number of groups to switch to other health-insurance

products such that the price increase would be unprofitable.

### (2)     Individual Health Insurance

25.     The sale of commercial individual health insurance, including

access to a provider network, is also a relevant product market.  Individual

health insurance is the only product available to individuals without access

to group coverage or government programs that allows them to (1) reduce

the financial risk of adverse health conditions and (2) access health care at

the discounted prices negotiated by commercial health insurers.

26.     There are no reasonable alternatives to individual health

insurance for individuals who lack access to group health insurance or

government programs such as Medicare and Medicaid.  As with group

insurance, purchasing hospital services directly, rather than through a

commercial insurer, is typically prohibitively expensive and is not a viable

substitute for individual health insurance.  Thus, a small but significant

increase in the price of individual health insurance in the geographic

markets alleged in paragraph 28 would not cause a sufficient number of

individuals to switch to other health-insurance products such that the price

increase would be unprofitable.

### C.    Relevant Geographic Markets

27.    The markets for commercial health insurance, including access

to a provider network, are local.  Patients typically seek medical care close

to their homes or workplaces.  As a result, consumers strongly prefer

health-insurance plans with networks of hospitals and physicians that are

close to their homes and workplaces.

28.    The following areas are relevant geographic markets for the

sale of group and individual commercial health insurance:

> a.    The Billings Metropolitan Statistical Area ("MSA")
>
> (Yellowstone and Carbon Counties);
>
> b.    The Bozeman Micropolitan Statistical Area ("MiSA")
>
> (Gallatin County);

      c.     The Helena MiSA (Lewis and Clark County and Jefferson County); and

      d.     The Missoula MSA (Missoula County).

29.    Consumers in these areas cannot practicably turn to commercial health insurers that do not have a network of providers in these areas.  Consequently, a small but significant increase in the price of commercial health insurance in these areas would not cause a sufficient number of consumers to switch to insurers outside of these areas to make such a price increase unprofitable.  These areas are, therefore, the relevant geographic markets within which to assess the likely effects of the Agreement, and they qualify as a "section of the country" within the meaning of Section 7 of the Clayton Act.

## IV.  LIKELY ANTICOMPETITIVE EFFECTS

30.    Blue Cross and New West are two of only three significant competitors for the sale of commercial health insurance in Billings, Bozeman, Helena, and Missoula.  Besides Blue Cross and New West, the

only other significant competitor in these areas is Allegiance, which is owned by CIGNA.

31.     Blue Cross has market power in the sale of commercial health insurance in the relevant geographic areas.  As the table below shows, Blue Cross's shares of commercial health insurance ranged from approximately 43% to 75% in the four relevant areas at the time the Agreement was signed, as measured by covered lives.  New West's shares of commercial health insurance ranged from 7% to 12% in those four areas at the time the Agreement was signed.

| Commercial Health Insurance Market Shares | | |
|---|---|---|
| | Blue Cross | New West |
| Billings | 43% | 9% |
| Missoula | 49% | 7% |
| Bozeman | 65% | 12% |
| Helena | 75% | 9% |

32.     The Agreement will cause Blue Cross's market share to increase in two ways.  First, the transfer of the hospitals' accounts to Blue Cross will directly increase Blue Cross's market share.  Second, because the

Agreement effectively eliminates New West as a viable competitor, New West's remaining customers are likely to switch insurers, with most moving to Blue Cross because it is the market leader.

33.    Thus, using the Herfindahl-Hirschman Index ("HHI"), a measure of concentration commonly relied on by the courts and antitrust agencies to measure market concentration (defined and explained in Appendix A), the transaction would significantly increase concentration. Assuming that all of the hospital defendants' business transfers to Blue Cross per the terms of the Agreement and that New West's other commercial business is lost to the remaining competitors in proportion to their current shares, the HHIs would increase by 640 in Billings to 2,290; by 1,277 in Bozeman to 5,870; by 1,100 in Helena to 6,900; and by 512 in Missoula to 3,690.  These HHI levels far exceed concentration levels that many courts have found create a presumption that an acquisition likely would substantially lessen competition in violation of the Clayton Act.

34.    In addition to harming competition by substantially increasing concentration in the relevant markets, the Agreement is likely to harm

consumers by eliminating the vigorous head-to-head competition between Blue Cross and New West.  For the past several years, New West has been one of only two significant alternatives to Blue Cross for commercial health insurance in the relevant areas.  Many consumers view Blue Cross and New West as the two most significant insurers in the relevant markets and each other's main competitor.

35.    Blue Cross and New West have a long history of competing against each other in the relevant areas to attract and retain customers by offering better products and services and lower prices.  New West has competed effectively with Blue Cross because New West has low rates with hospitals and physicians throughout Montana, including, notably, its own hospitals and hospital-owned physician practices; a broad network of hospitals and physicians; and a strong reputation for high-quality customer service.

36.    Since the Agreement was announced in August 2011, many employers in Montana have chosen not to purchase health insurance from New West, likely because they were unsure whether New West would

continue to exist.  Some of those employers have already switched their

business to Blue Cross, and many more likely will.

37.    The Agreement has eliminated and will continue to

substantially eliminate competition between Blue Cross and New West.

Without New West as an effective competitor, Blue Cross will likely

increase prices and reduce the quality and service of commercial health-

insurance plans to employers and individuals in the relevant areas.

## V.  ABSENCE OF COUNTERVAILING FACTORS

### A.    Entry

38.    Entry of new health insurers or expansion of existing health

insurers is unlikely to prevent the harm to competition that the Agreement

has caused and likely will continue to cause.  Most health insurers that

have attempted to enter or expand into the four alleged geographic

markets in recent years have been unsuccessful.

**B.     Efficiencies**

39.     The Agreement has not generated and likely will not generate

verifiable, agreement-specific efficiencies sufficient to reverse or outweigh

the anticompetitive effects that it has already caused and is likely to cause.

## VI.  VIOLATIONS ALLEGED

**Count One: Unlawful Agreement in Violation of Sherman Act § 1**

40.     Plaintiffs repeat and reallege the allegations of paragraphs 1

through 39.

41.     The Agreement to enter into the transaction is a contract,

combination, and conspiracy that unreasonably restrains interstate trade or

commerce, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

**Count Two: Unlawful Acquisition in Violation of Clayton Act § 7**

42.     Plaintiffs repeat and reallege the allegations of paragraphs 1

through 39.

43.     The acquisition has substantially lessened competition in the

sale of commercial health insurance in the relevant areas, and will likely

continue to do so, in violation of Section 7 of the Clayton Act, 15 U.S.C. §

18, in that (1) actual and potential competition between Blue Cross and

New West in the alleged geographic markets has been and will be

eliminated; and (2) competition in the alleged geographic markets for the

sale of commercial health insurance has been and likely will continue to be

substantially lessened.

### Count Three: Unlawful Restraint of Trade
### in Violation of Montana Unfair Trade Practices Act

44.    Plaintiffs repeat and reallege the allegations of paragraphs 1

through 39.

45.    The Agreement to enter into the transaction is an unlawful

agreement for the purpose of regulating the production of an article of

commerce, in violation of Mont. Code Ann. § 30-14-205(1).

### VII.  REQUESTED RELIEF

46.    Plaintiffs request that this Court:

a.    adjudge and decree that the Agreement violates Section 1

of the Sherman Act, 15 U.S.C. § 1; Section 7 of the Clayton

Act, 15 U.S.C. § 18; and Mont. Code Ann. § 30-14-205(1);

b.     preliminarily and permanently enjoin the defendants

from carrying out the Agreement;

c.     provide equitable relief sufficient to restore the

competition lost due to the Agreement;

d.     award plaintiffs their costs in this action; and

e.     award plaintiffs such other relief as may be just and

proper.

Dated:        November 8, 2011

Respectfully submitted,

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

Sharis A. Pozen
Acting Assistant Attorney General

Leslie C. Overton
Special Advisor

Patricia A. Brink
Director of Civil Enforcement

Joshua H. Soven
Chief, Litigation I Section

Leif M. Johnson
Civil Chief
Office of the U.S. Attorney
District of Montana

Peter J. Mucchetti* (DC Bar #463202)
Assistant Chief, Litigation I Section

Claudia H. Dulmage
Scott I. Fitzgerald
Barry J. Joyce
Attorneys for the United States

U.S. Department of Justice
Antitrust Division
Litigation I Section
450 Fifth Street, N.W., Suite 4100
Washington, DC  20530
Tel.: (202) 353-4211
Fax: (202) 307-5802

*Attorney of Record

**FOR PLAINTIFF STATE OF MONTANA:**

Steve Bullock
Attorney General of Montana

James P. Molloy
Chief of Consumer Protection

Chuck Munson
Assistant Attorney General

215 N. Sanders
P.O. Box 201401
Helena, MT 59620
Tel.: (406) 444-2026

## CERTIFICATE OF SERVICE

I hereby certify that, on November 8, 2011, a copy of the foregoing document was served on the following persons by the following means:

   1    CM/ECF
  ____  Hand Delivery
  ____  U.S. Mail
  ____  Overnight Delivery Service
  ____  Fax
  2,3   E-Mail

**1.     Clerk, U.S. District Court**

**2.     Counsel for Defendant Blue Cross and Blue Shield of Montana:**

         David C. Lundsgaard
         Graham & Dunn PC
         Pier 70
         2801 Alaskan Way Suite 300
         Seattle, WA 98121-1128
         dlundsgaard@grahamdunn.com

**3.     Counsel for Billings Clinic; Bozeman Deaconess Health Services, Inc.; Community Medical Center, Inc.; New West Health Services, Inc.; Northern Montana Health Care, Inc.; and St. Peter's Hospital:**

         Kevin P. Heaney
         Crowley Fleck PLLP
         Transwestern Plaza II
         490 N. 31st St., Suite 500
         Billings, MT 59101
         kheaney@crowleyfleck.com

Peter J. Mucchetti
Antitrust Division
U.S. Department of Justice
450 Fifth Street, NW, Suite 4100
Washington, DC 20530
Tel.: (202) 353-4211
peter.j.mucchetti@usdoj.gov