IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

**FILED**

MAR 1 5 2012

PATRICK E. DUFFY  CLERK
BY_____
         Deputy Clerk
U.S. DISTRICT COURT
BILLINGS DIVISION

UNITED STATES OF AMERICA and
STATE OF MONTANA,

                    *Plaintiffs,*

         v.

BLUE CROSS AND BLUE SHIELD
OF MONTANA, INC., BILLINGS
CLINIC, BOZEMAN DEACONESS
HEALTH SERVICES, INC.,
COMMUNITY MEDICAL CENTER,
INC., NEW WEST HEALTH
SERVICES, INC., NORTHERN
MONTANA HEALTH CARE, INC.,
and ST. PETER'S HOSPITAL,

                    *Defendants.*

Case No.1:11-cv-00123-RFC

## FINAL JUDGMENT

WHEREAS, Plaintiffs, the United States of America and the State of

Montana, filed their Complaint on November 8, 2011, alleging that

Defendants Blue Cross, New West, Billings Clinic, Bozeman Deaconess,

Community Medical Center, Northern Montana Health Care, and St.

Peter's, by their respective attorneys, have consented to the entry of this

Final Judgment without trial or adjudication of any issue of fact or law and

without this Final Judgment constituting any evidence against or

admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of

this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt

and certain divestiture of certain rights and assets by New West and the

Hospital Defendants to ensure that competition is not substantially

lessened by the Agreement;

AND WHEREAS, the United States and the State of Montana require

Defendants to make certain divestitures for the purpose of remedying the

loss of competition alleged in the Complaint;

AND WHEREAS, New West and the Hospital Defendants have

represented to the United States and the State of Montana that the

divestiture required by this Final Judgment can and will be made, and that

they will not later raise any claim of hardship or difficulty as grounds for

asking the Court to modify any of the provisions of this Final Judgment;

NOW THEREFORE, before any testimony is taken, without trial or

adjudication of any issue of fact or law, and upon consent of the parties, it

is ORDERED, ADJUDGED, AND DECREED:

## I.  JURISDICTION

This Court has jurisdiction over the subject matter of, and each of the

parties to, this action.  The Complaint states a claim upon which relief may

be granted against Defendants under Section 1 of the Sherman Act, 15

U.S.C. § 1; Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18; and the

Montana Unfair Trade Practices Act, Mont. Code Ann. § 30-14-205.

## II. DEFINITIONS

As used in this Final Judgment:

A.      "**Acquirer**" means the entity to whom the Divestiture Assets

are divested.

B.      "**Agreement**" means the Letter of Intent dated on or around

August 1, 2011, by and among Blue Cross and the Hospital Defendants.

– 3 –

C.     "**Billings Clinic**" means Defendant Billings Clinic, a Montana non-profit corporation based in Billings, Montana, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their respective directors, officers, managers, agents, and employees.

D.     "**Blue Cross**" means Defendant Blue Cross and Blue Shield of Montana, Inc., a Montana corporation based in Helena, Montana, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their respective directors, officers, managers, agents, and employees.

E.     "**Bozeman Deaconess**" means Defendant Bozeman Deaconess Health Services, Inc., a Montana non-profit corporation based in Bozeman, Montana, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their respective directors, officers, managers, agents, and employees.

F.     "**Broker**" means any insurance agent, producer, or broker who facilitates the sale of health-insurance plans to individuals or groups.

G.    **"Community Medical Center"** means Community Medical

Center, Inc., a Montana non-profit corporation based in Missoula,

Montana, its successors and assigns, and its subsidiaries, divisions, groups,

affiliates, partnerships, and joint ventures, and their respective directors,

officers, managers, agents, and employees.

H.    **"Divestiture Assets"** means:

(1)    New West's Commercial Health Insurance Business;

(2)    all business, financial, and operational books, records,

and data, both current and historical, that relate to New West's

Commercial Health Insurance Business.

I.    **"Health-Care Provider"** means any person or entity that

provides any health-care service, including hospitals, physician groups,

laboratories, ambulatory surgical centers, nursing facilities, and other

providers of health-care services.

J.    **"Health Insurer"** means any entity that is responsible for all or

part of any expense for health-care services provided to any person or

group.  The term includes commercial health-insurance plans, including

health-maintenance organizations, preferred-provider organizations, and

indemnity plans; health-care provider rental networks, union trust funds,

and multiple employer trusts; and self-insured health plans.

K.    "**Hospital Defendants**" means Billings Clinic, Bozeman

Deaconess, Community Medical Center, Northern Montana Health Care,

and St. Peter's.

L.    "**Most-Favored-Nation Provision**" means any most-favored-

nation, most-favored-discount, or most-favored-pricing provision in any

health-care provider agreement.  The term includes any Blue Cross policy,

practice, or contractual provision that conditions Blue Cross's payment rate

or discount to any health-care provider on another health insurer's

payment rate or discount to that provider, regardless of how such policy,

practice, or contractual provision is denominated.

M.    "**New West**" means New West Health Services, Inc., a Montana

non-profit corporation based in Helena, Montana, its successors and

assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and

joint ventures, and their respective directors, officers, managers, agents, and employees.

N.    "**New West's Commercial Health Insurance Business**" means all of New West's health-insurance contracts and policies for products providing commercial health insurance, including fully-insured and administrative-services-only products, health-maintenance organization products, preferred-provider organization products, point-of-service products, and indemnity-insurance products, for both groups and individuals.  The term "New West's Commercial Health Insurance Business" does not include (1) New West's Medicare Advantage products and (2) New West's health-insurance contracts and policies covering employees and dependents of the Hospital Defendants.

O.    "**Northern Montana Health Care**" means Northern Montana Health Care, Inc., a Montana non-profit corporation based in Havre, Montana, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their respective directors, officers, managers, agents, and employees.

P.    **"PacificSource"** means PacificSource Health Plans, an Oregon non-profit corporation based in Springfield, Oregon.

Q.    **"Provider Network"** means all of the health-care providers that have contracted with a particular health insurer to provide medical services.

R.    **"St. Peter's"** means St. Peter's Hospital, a Montana non-profit corporation based in Helena, Montana, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their respective directors, officers, managers, agents, and employees.

### III. APPLICABILITY

A.    This Final Judgment applies to Blue Cross, New West, and the Hospital Defendants, as defined above, and to all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.    If, before complying with Sections IV and VI of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets,

they must require the purchaser to be bound by the provisions of this Final

Judgment.  Defendants do not need to obtain such an agreement from the

Acquirer of the assets divested pursuant to this Final Judgment.

## IV. DIVESTITURES

A.    New West and the Hospital Defendants are ordered, within 30

calendar days after the filing of the Complaint in this matter, to divest the

Divestiture Assets in a manner consistent with this Final Judgment (1) to an

Acquirer acceptable to the United States in its sole discretion, after

consultation with the State of Montana; and (2) on terms acceptable to the

United States in its sole discretion, after consultation with the State of

Montana.  The United States in its sole discretion, after consultation with

the State of Montana, may grant one extension of this time period not to

exceed 30 calendar days in total, and shall notify the Court in such

circumstances.

B.    New West and the Hospital Defendants must obtain all

regulatory approvals necessary for such divestitures as expeditiously as

possible.  If applications for approval have been filed with the appropriate

governmental units within 5 calendar days after the United States has

provided written notice, pursuant to Section VII(C), that it does not object

to a proposed divestiture, but these required approvals have not been

issued before the end of the period permitted for Divestiture in Section

IV(A), the United States will extend the period for Divestiture until five

business days after all necessary government approvals have been

received.

C.     New West and the Hospital Defendants must permit

prospective Acquirers of the Divestiture Assets to have reasonable access to

New West personnel and access to any and all financial, operational, or

other documents and information customarily provided as part of a due-

diligence process.

D.     New West and the Hospital Defendants must divest New

West's fully-insured Commercial Health Insurance Business to the

Acquirer through a bulk-reinsurance agreement, as provided by Mont.

Code Ann. § 33-2-1212.  New West and the Hospital Defendants must

divest the remainder of New West's Commercial Health Insurance

Business, including its administrative-services-only contracts, to the

Acquirer at the same time as they divest New West's fully-insured

business.

E.      The Divestiture must be accomplished in such a way as to

satisfy the United States in its sole discretion, after consultation with the

State of Montana, that the Divestiture Assets can and will be used by the

Acquirer as part of a viable, ongoing business engaged in the sale of

commercial health insurance, and that the Divestiture will remedy the

competitive harm alleged in the Complaint.  The Divestiture must be:

(1)      made to an Acquirer that, in the United States' sole

judgment, after consultation with the State of Montana, has the intent and

capability (including the necessary managerial, operational, technical, and

financial capability) to compete effectively in the sale of commercial health

insurance in the Billings Metropolitan Statistical Area ("MSA"), Bozeman

Micropolitan Statistical Area ("MiSA"), Helena MiSA, and Missoula MSA;

and

(2)    accomplished so as to satisfy the United States, in its sole discretion, after consultation with the State of Montana, that none of the terms of any agreement between New West or the Hospital Defendants and the Acquirer gives New West and the Hospital Defendants the ability unreasonably to raise the Acquirer's costs, to lower the Acquirer's efficiency, or otherwise to interfere with the Acquirer's ability to compete effectively.

F.    New West and the Hospital Defendants must first attempt to sell the Divestiture Assets to PacificSource.

G.    For three years, the Hospital Defendants must contract to participate in the Acquirer's provider network on terms that are substantially similar to the Hospital Defendants' existing contractual terms with New West as determined by the United States in its sole discretion, after consultation with the State of Montana.

H.    At the Acquirer's option, New West and the Hospital Defendants must use their best efforts to assign to the Acquirer all

contracts for the provision of medical services that New West has with health-care providers that are not controlled by the Hospital Defendants.

    I.    For three years, at the Acquirer's option, New West must also lease its provider network to the Acquirer.  Until the expiration of such a lease, New West and the Hospital Defendants must use their best efforts to maintain New West's provider network, including maintaining contracts, with substantially similar terms, with all health-care providers in New West's provider network as of August 1, 2011.

    J.    New West and the Hospital Defendants must use their best efforts to maintain New West's contracts for coverage of at least 14,600 enrollees in fully- or self-insured commercial health-insurance plans until the Divestiture Assets are transferred to the Acquirer.  To encourage New West's management to meet this membership target, the Hospital Defendants and New West will fund an incentive pool of at least $50,000, which will be available to New West's management if they meet the membership target as of the closing date for the sale of the Divestiture Assets.

K.    New West must provide the plaintiffs with bi-weekly reports on total commercial health-insurance membership until the divestitures required by this Final Judgment are complete.

L.    New West and the Hospital Defendants must provide the Acquirer, the United States, and the State of Montana with information relating to the personnel involved in the operation of the Divestiture Assets to enable the Acquirer to make offers of employment.  For a period of two years from the filing of the Complaint in this matter, New West may not hire or solicit to hire any such person who was hired by the Acquirer, unless the Acquirer has notified such person that the Acquirer does not intend to continue to employ the person.  Until the divestiture is completed, Blue Cross may not solicit to hire any such person who was hired by the Acquirer.

M.    At the Acquirer's option, and subject to approval by the United States, after consultation with the State of Montana, New West and the Hospital Defendants must provide transitional support services that are reasonably necessary for the Acquirer to operate the Divestiture Assets,

including but not limited to medical-claims processing, appeals and

grievances, call-center support, enrollment and eligibility services, access to

form templates, pharmacy services, disease management, and quality-

assurance services, and may charge the Acquirer commercially reasonable

rates for these services.  The Hospital Defendants and New West may not

provide such transitional support services for more than 12 months from

the date of the completion of the Divestiture unless the United States, after

consultation with the State of Montana, shall otherwise approve.

N.      To ensure an effective transition of the Divestiture Assets to the

Acquirer, New West and the Hospital Defendants must cooperate and

work with the Acquirer in transition planning and implementation of the

transfer of the Divestiture Assets.

O.      Defendants may not take any action that will impede in any

way the permitting, operation, or divestiture of the Divestiture Assets.

P.      New West and the Hospital Defendants must communicate and

cooperate fully with the Acquirer to promptly identify and obtain all

consents of government agencies necessary to divest the Divestiture Assets.

– 15 –

## V. INJUNCTIVE RELIEF AS TO BLUE CROSS

A.     Blue Cross may not, without providing 30 days' advance written notification to the Plaintiffs:

(1)     condition the right of any broker to sell Blue Cross health-insurance products based on whether the broker sells non-Blue Cross health-insurance products;  or

(2)     require any broker to be, or agree with any broker that it will become, an exclusive broker for Blue Cross.

Provided, however, that this Section does not apply to brokers who are employees of Blue Cross or entities wholly or partially owned by Blue Cross.  Provided, further, that nothing in this Final Judgment prohibits Blue Cross from terminating or refusing to appoint any broker, or dealing with brokers on any terms, so long as Blue Cross does not violate the prohibitions in this Section.

B.     Blue Cross, without providing 30 days' advance written notification to the Plaintiffs, may not enter into, adopt, maintain, or enforce any term in any agreement that directly or indirectly:

(1)     prohibits or discourages a health-care provider from

(a) participating in another health insurer's provider network or (b)

negotiating or contracting with another health insurer; or

(2)     conditions the price that Blue Cross will pay a health-care

provider, or other contract term, on whether the provider participates in

another health insurer's provider network.

C.     Blue Cross, without providing 30 days' advance written

notification to the Plaintiffs, may not enter into, adopt, maintain, or enforce

any most-favored-nation provision in any agreement with a health-care

provider.

D.     Within 30 days of receiving the notice required by Sections

V(A)–(C) of this Final Judgment, representatives of the Antitrust Division

may issue a Civil Investigative Demand ("CID"), pursuant to 15 U.S.C. §§

1311-14, for additional information or documentary material relevant to the

notification.  The Antitrust Division may share the information and

documentary material produced in response to the CID with the State of

Montana.  If the Antitrust Division issues a CID, Blue Cross may not enter

into, adopt, maintain, or enforce the notified agreement until 30 calendar days after certifying compliance with the CID.

E.    Nothing in this Final Judgment prohibits Blue Cross from undertaking the actions described in Sections V(A)–(C), provided that Blue Cross provides the required notice and, if necessary, waits for the expiration of the periods described in Section V(D).

F.    This Section expires six years from the date of entry of the Final Judgment.

## VI.  APPOINTMENT OF TRUSTEE

A.    If New West and the Hospital Defendants have not divested the Divestiture Assets within the time period specified in Section IV(A) and (B), they must notify the United States of that fact in writing.  Upon application of the United States, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets.

B.    After the appointment of a trustee becomes effective, only the trustee may have the right to sell the Divestiture Assets.  The trustee will

have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States, after consultation with the State of Montana, at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, VI, and VII of this Final Judgment, and will have such other powers as this Court deems appropriate.  Subject to Section VI(D) of this Final Judgment, the trustee may hire at the cost and expense of New West and the Hospital Defendants any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

C.      Defendants may not object to a sale by the trustee on any ground other than the trustee's malfeasance.  Any such objections by Defendants must be conveyed in writing to the United States, the State of Montana, and the trustee within 10 calendar days after the trustee has provided the notice required under Section VII.

D.      The trustee must serve at the cost and expense of New West and the Hospital Defendants, on such terms and conditions as the United

States approves, and must account for all monies derived from the sale of the assets sold by the trustee and all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to New West and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Divestiture Assets and based on a fee arrangement providing the trustee with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E.      New West and the Hospital Defendants must use their best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee must have full and complete access to the personnel, books, records, and facilities relating to the Divestiture Assets, and New West and the Hospital Defendants must develop financial and other information relevant to such business as the trustee may reasonably

request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. Defendants may not take any action to interfere with or to impede the trustee's accomplishment of the divestiture.

      F.     After its appointment, the trustee must file monthly reports with the United States, the State of Montana, and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent that such reports contain information that the trustee deems confidential, such reports may not be filed in the public docket of the Court. Such reports must include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any interest in the Divestiture Assets, and must describe in detail each contact with any such person. The trustee must maintain full records of all efforts made to divest the Divestiture Assets.

G.     If the trustee has not accomplished the divestiture ordered under this Final Judgment within six months after its appointment, the trustee must promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture, (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished, and (3) the trustee's recommendations.  To the extent that such reports contain information that the trustee deems confidential, such reports may not be filed in the public docket of the Court.  The trustee must at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust.  The Court thereafter shall enter such orders as it deems appropriate to carry out the purpose of the Final Judgment.  The Court may, if necessary and requested by the United States, extend the trust and the term of the trustee's appointment by a period no longer than six months.  If at the end of all extensions of the trustee's term, the trustee has not accomplished the divestiture, then New West and the Hospital Defendants will have no further obligations to preserve the divestiture

assets as required by Section V of the Asset Preservation Stipulation and Order in this matter.

## VII.   NOTICE OF PROPOSED DIVESTITURE

A.   Within two business days following execution of a definitive divestiture agreement, New West and the Hospital Defendants, or the trustee, whichever is then responsible for effecting the divestiture required herein, must notify the United States and the State of Montana of any proposed divestiture required by Section IV or VI of this Final Judgment. If the trustee is responsible, it must similarly notify Defendants.  The notice must set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire any ownership interest in the Divestiture Assets, together with full details of the same.

B.   Within five business days of receipt by the United States and the State of Montana of such notice, the United States may request from Defendants, the proposed Acquirer, any other third party, or the trustee, if applicable, additional information concerning the proposed divestiture, the

proposed Acquirer, and any other potential Acquirer.  Defendants and the

trustee must furnish any additional information requested within five

business days of the receipt of the request, unless the parties shall

otherwise agree.

C.     Within 15 calendar days after receipt of the notice or within 10

calendar days after the United States has been provided the additional

information requested from Defendants, the proposed Acquirer, any third

party, and the trustee, whichever is later, the United States must provide

written notice to Defendants and the trustee, if there is one, stating whether

or not it objects to the proposed divestiture.  If the United States provides

written notice that it does not object, the divestiture may be consummated,

subject only to Defendants' limited right to object to the sale under Section

VI(C) of this Final Judgment.  Absent written notice that the United States

does not object to the proposed Acquirer or upon objection by the United

States, a divestiture proposed under Section IV or Section VI may not be

consummated.  Upon objection by Defendants under Section VI(C), a

divestiture proposed under Section VI may not be consummated unless

approved by the Court.

## VIII.  FINANCING

Defendants may not finance all or any part of any Purchase made

pursuant to Section IV or VI of this Final Judgment.

## IX.  ASSET PRESERVATION

Until the divestiture required by this Final Judgment has been

accomplished, Defendants must take all steps necessary to comply with the

Asset Preservation Stipulation and Order entered by this Court.

Defendants may not take any action that will jeopardize the divestiture

ordered by this Court.  Provided, however, that nothing in this Final

Judgment precludes Blue Cross from competing for New West's

commercial health-insurance customers, before or after the sale of the

divestiture assets.

## X.  AFFIDAVITS AND RECORDS

A.      Within 10 calendar days of the filing of the Complaint in this

matter, and every 10 calendar days thereafter until the divestiture has been

completed under Section IV or VI, New West and the Hospital Defendants

must deliver to the United States and the State of Montana an affidavit as

to the fact and manner of its compliance with Section IV or VI of this Final

Judgment.  Each such affidavit must include the name, address, and

telephone number of each person who, during the preceding 10 calendar

days, made an offer to acquire, expressed an interest in acquiring, entered

into negotiations to acquire, or was contacted or made an inquiry about

acquiring, any interest in the Divestiture Assets, and must describe in

detail each contact with any such person during that period.  Each such

affidavit must also include a description of the efforts Defendants have

taken to solicit buyers for the Divestiture Assets, and to provide required

information to prospective Acquirers, including the limitations, if any, on

such information.  Assuming that the information set forth in the affidavit

is true and complete, any objection by the United States, after consultation

with the State of Montana, to information provided by Defendants,

including limitation on information, must be made within 14 calendar days

of receipt of such affidavit.

B.      Within 10 calendar days of the filing of the Complaint in this

matter, Defendants must deliver to the United States and the State of

Montana an affidavit that describes in reasonable detail all actions that

Defendants have taken and all steps that Defendants have implemented on

an ongoing basis to comply with Section IX of this Final Judgment.

Defendants must deliver to the United States and the State of Montana an

affidavit describing any changes to the efforts and actions outlined in

Defendants' earlier affidavits filed pursuant to this section within 10

calendar days after the change is implemented.

C.      New West and the Hospital Defendants must keep all records

of all efforts made to preserve and divest the Divestiture Assets until one

year after such divestiture has been completed.

## XI.  COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with

this Final Judgment, or of determining whether the Final Judgment should

be modified or vacated, and subject to any legally recognized privilege,

from time to time authorized representatives of the United States

Department of Justice, including persons retained by the United States,

must, upon written request of an authorized representative of the Assistant

Attorney General in charge of the Antitrust Division, and on reasonable

notice to Defendants, be permitted:

    (1)    access during Defendants' office hours to inspect and

copy, or at the option of the United States, to require Defendants to provide

hard copy and electronic copies of, all books, ledgers, accounts, records,

data, and documents in the possession, custody, or control of Defendants,

relating to any matters contained in this Final Judgment; and

    (2)    to interview, either informally or on the record,

Defendants' officers, employees, or agents, who may have their individual

counsel present, regarding these matters.  The interviews must be subject

to the reasonable convenience of the interviewee and without restraint or

interference by Defendants.

    B.    Upon the written request of an authorized representative of the

Assistant Attorney General in charge of the Antitrust Division, Defendants

must submit written reports, or responses to written interrogatories, under

oath if requested, relating to any of the matters contained in this Final Judgment.

      C.     The United States may share information or documents obtained under Section XI with the State of Montana.

      D.     No information or documents obtained by the means provided in this section may be divulged by the United States or the State of Montana to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States or the State of Montana is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

      E.     If at the time information or documents are furnished by Defendants to the United States, Defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the

Federal Rules of Civil Procedure," then the United States must give Defendants 10 calendar days notice before divulging such material in any legal proceeding (other than grand jury proceedings).

## XII. NO REACQUISITION

Defendants may not acquire or reacquire any part of the Divestiture Assets during the term of this Final Judgment.

## XIII.   RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV.   EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire 10 years from the date of its entry.

## XV.  PUBLIC-INTEREST DETERMINATION

Entry of this Final Judgment is in the public interest.  The parties

have complied with the requirements of the Antitrust Procedures and

Penalties Act, 15 U.S.C. § 16, including making copies available to the

public of this Final Judgment, the Competitive Impact Statement, and any

comments thereon and the United States' response to comments.  Based

upon the record before the Court, which includes the Competitive Impact

Statement and any comments and response to comments filed with the

Court, entry of this Final Judgment is in the public interest.


Date: *March 15, 2012*        Court approval subject to procedures set
forth in the Antitrust Procedures and
Penalties Act, 15 U.S.C. § 16.


United States District Judge